**Tejal D. Shah**
**Sandeep Satwalekar**
**Elisa S. Solomon**
**Zheng (Jane) He**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**100 Pearl Street**
**Suite 20-100**
**New York, NY 10004-2616**
**212-336-0427 (Solomon)**
**SolomonEl@sec.gov**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>     **Plaintiff,**<br><br>     -against-<br><br>**JOSHUA SCHUSTER and SCHUSTER ENTERPRISES LLC (d/b/a Silverback),**<br><br>     **Defendants.** | **COMPLAINT**<br>**25 Civ. 3800 (     )**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Joshua Schuster ("Schuster") and Schuster Enterprises LLC (d/b/a Silverback) ("Silverback") (collectively, "Defendants"), alleges as follows:

**SUMMARY**

1.     Beginning in at least August 2018, Silverback and its principal and owner, Schuster, defrauded investors by raising more than $6 million for a real estate development project and misappropriating over $2 million of those funds.

2.     Silverback and Schuster offered and sold membership interests in at least two limited liability companies ("LLCs") to raise capital for developing a high-end condominium real estate development project located at 351-359 Second Avenue, New York, NY 10010, between 20th

Street and 21st Street in Manhattan, 10010 (the "Second Avenue Project").

3.    Pitching large returns on investment, Defendants raised over $6 million from at least three investors by selling membership interests in these LLCs.

4.    Based on Defendants' representations and the terms of the relevant LLC agreements, these investors expected that Defendants would use investor funds solely to develop the Second Avenue Project into a profitable investment.

5.    However, rather than using the investors' capital contributions to develop the Second Avenue Project as represented, Defendants engaged in a scheme to misappropriate over $2 million of these funds to make payments for Schuster's personal benefit, cover Silverback's general corporate and payroll expenses, and fund other real estate projects developed by Defendants, including through Ponzi-like payments to investors in other projects.

6.    Moreover, despite having misappropriated substantial portions of the initial capital contributions from investors, Defendants continued to offer membership interests to and solicit additional capital contributions from these investors.

7.    Defendants also knowingly or recklessly failed to disclose certain financial information about the Second Avenue Project in their offerings related to the Second Avenue Project, misleading and defrauding at least one investor by selectively disclosing certain loans while failing to disclose the existence of other material loans that were in default.  Defendants further attempted to conceal their misrepresentations by failing to provide this investor with accurate required periodic financial reports and progress updates.

8.    To date, Defendant have not distributed revenues from the Second Avenue Project to the investors described in this Complaint.

## VIOLATIONS

9.    By virtue of the foregoing conduct and as alleged further herein, Defendants

Schuster and Silverback have violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

10.    Unless Defendants are restrained and enjoined, they will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of a similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

11.    The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

12.    The Commission seeks a final judgment: (a) permanently enjoining Schuster from violating the federal securities laws and rules this Complaint alleges he violated; (b) permanently enjoining Silverback from violating the federal securities laws and rules this Complaint alleges it violated; (c) ordering Defendants to disgorge all ill-gotten gains they received as a result of the violations alleged here and to pay pre-judgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; (d) ordering Defendants to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; (e) permanently enjoining Schuster from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer, except for purchasing or selling securities for his own personal account, pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d)(1) and 21(d)(5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1) and 78u(d)(5)]; and (f) granting any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].

14.     Defendants, directly and indirectly, made use of the means or instruments of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this Complaint.

15.     Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].  Defendants transacted business in the Southern District of New York, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including soliciting, offering, and selling securities to investors and maintaining an office in the District.  In addition, the property underlying the LLC agreements in which Defendants sold membership interests, the Second Avenue Project, is located in the District.

## DEFENDANTS

16.     Schuster, age 41, is a resident of Boca Raton, Florida.  Schuster is the founder and principal of Silverback.  During at least a portion of the time period at issue in this Complaint, Schuster resided in New York, New York.  Schuster has never been associated with a Commission registrant.

17.     Silverback is a New York LLC with its principal place of business in New York, New York.  Silverback is a real estate development company organized in February 2016 and is controlled by Schuster.  At least during the time period at issue in this Complaint, Silverback was wholly owned by Schuster or LFJ Holdings LLC, a New York LLC that Schuster, his wife, and their three children own.  Silverback has never been registered with the Commission in any capacity.

4

## OTHER RELEVANT ENTITIES

18.     **SD Second Avenue Property, LLC** ("SD Property") is a Delaware LLC and the entity that owns the real properties underlying the Second Avenue Project.

19.     **SD Second Avenue Holding, LLC** ("SD Holding") is a Delaware LLC and the entity that wholly owns SD Property.

20.     **SD Second Avenue Venture, LLC** ("SD Venture") is a Delaware LLC that was the sole owner of SD Holding during the time period at issue in this Complaint.

21.     **SD Second Avenue Member LLC** ("SB Member") is a Delaware LLC that was the 49.5% owner of SD Venture at least as of May 2019.

22.     **JVEM Silverback Gramercy LLC** ("JVEM Silverback") is a Delaware LLC that is the sole owner of SB Member.  During the time period at issue in this Complaint, JVEM Silverback was owned by SD Manager and JVEM Gramercy.

23.     **JVEM Gramercy LLC** ("JVEM Gramercy") is a New York LLC through which two of the investors at issue in this Complaint ("Investor A" and "Investor B") contributed to the Second Avenue Project, as described below.  As of June 2019, JVEM Gramercy was 50% owned by an entity owned by Defendant Silverback.

24.     **SD Second Avenue Manager LLC** ("SD Manager") is a Delaware LLC that served as the developer on the Second Avenue Project.  SD Manager is the LLC through which one of the investors at issue in this Complaint ("Investor C") contributed to the Second Avenue Project, as described below.  SD Manager was, throughout the time period at issue in this Complaint, at least partially owned by Defendant Silverback.

25.     The chart below reflects various of the entities at issue in the Complaint through which Investor A, Investor B, and Investor C (collectively, "Second Avenue Project Investors") had interests, directly or indirectly, in the Second Avenue Project.



**FACTS**

I.      **BACKGROUND**

A.      **Schuster Becomes the Developer of the Second Avenue Project**

26.     Schuster founded Silverback in or around 2016 after working for real estate development and investment entities in the New York City area.

27.     Sometime before or during 2018, Schuster entered into an agreement with the owner of the real property underlying the Second Avenue Project.

28.     Through this agreement, SB Member, which is wholly owned by JVEM Silverback, acquired an ownership interest in the Second Avenue Project.

29.     That agreement also contemplated that Silverback, or a different entity controlled by Schuster, would serve as the developer of the project under a development agreement.

30.     The development agreement, which was eventually signed in June 2019, designated Schuster's entity, SD Manager, as the developer of the Second Avenue Project (the "Developer

Agreement").

**B.    Schuster Solicits Investors for the Second Avenue Project Through JVEM Gramercy**

31.    Schuster met Investor A through a charity at some time in 2018.  He pitched to Investor A several projects, including the Second Avenue Project.

32.    Investor A then introduced Schuster to Investor B.

33.    Schuster encouraged Investor A and Investor B to invest in the Second Avenue Project by representing that they would at least double their investment in the project, which was expected to be completed in three to four years.

34.    Relying on Schuster's representations, Investor A and Investor B collectively invested at least $650,000 in the Second Avenue Project.

35.    In exchange for these investments, Investor A and Investor B became members of JVEM Gramercy, each with a 25% ownership stake in that entity.

36.    Under the agreement governing Investor A and Investor B's interests in JVEM Gramercy (the "JVEM Gramercy LLC Agreement"), Investor A and Investor B were entitled to repayment of their capital contributions and then distributions of any profits in accordance with their membership interests in JVEM Gramercy.

37.    The JVEM Gramercy LLC Agreement stated that the membership interests had not been registered with the Commission and were being offered and sold in reliance on exemptions from the registration requirements of the Securities Act.

38.    Based on discussions with Schuster during his solicitation of their investments, Investor A and Investor B expected to rely solely on Defendants' expertise to develop the Second Avenue Project to manage and develop the project into a profitable investment.

39.    These expectations were memorialized in the JVEM Gramercy LLC Agreement, which provided that Investor A and Investor B were non-managing members of JVEM Gramercy.

40.     Specifically, Investor A and Investor B had no rights to participate in the day-to-day management of JVEM Gramercy or the Second Avenue Project, and no rights to replace the manager of JVEM Gramercy except in the event of the manager's death or incapacity.

41.     Contrary to Defendants' representations that the funds would be used to develop the Second Avenue Project, Defendants subsequently misappropriated funds deposited by Investor A and Investor B, as detailed in paragraphs 73 to 80 below.

42.     To date, Investor A and Investor B have not received any return of the capital they invested in JVEM Gramercy or any distribution of profit from the Second Avenue Project.

**C.     Schuster Solicits Investor C's Initial Investment in the Second Avenue Project**

43.     By no later than 2019, Defendants encountered liquidity issues in connection with the Second Avenue Project and were looking for new sources of funding.

44.     Sometime in 2019, Investor C was introduced to Schuster through mutual acquaintances.  Investor C, who is in his mid-seventies, informed Schuster he wanted to use the proceeds from a recent sale of family-owned real estate to invest in a Qualified Opportunity Zone project for tax purposes.

45.     Although the Second Avenue Project was not a Qualified Opportunity Zone project, Schuster nevertheless persuaded Investor C to invest in the Second Avenue Project.

46.     Schuster shared his expectation with Investor C that the Second Avenue Project would be completed by the end of 2021, and provided Investor C with certain documents and financial information indicating that Second Avenue Project was projected to earn a significant profit.

47.     Investor C understood that Defendants, through the SD Manager entity, were entitled to receive development fees totaling at least $1.8 million from the Second Avenue Project.

48.     Additionally, SD Manager indirectly held a controlling interest in SB Member,

which owns 49.5% of the membership interest in the Second Avenue Project, as described above.

49.    In December 2019, Investor C contributed $5 million in exchange for a 48% membership interest in SD Manager, with Silverback owning the remaining 52%.

50.    To memorialize the parties' intent, Investor C and Silverback entered into the Amended and Restated Limited Liability Company Agreement of SD Manager (the "SD Manager LLC Agreement").

51.    The SD Manager LLC Agreement stated that the "securities (membership interests) evidenced by and/or issued pursuant to this agreement have not been registered under the Securities Act of 1933" or state laws, and therefore restricted the transfer of these securities.

52.    The SD Manager LLC Agreement provided that Silverback and Investor C would share any distributions of cash from the Second Avenue Project, with roughly 54% to Investor C and roughly 46% to Silverback.

53.    To induce Investor C into investing in the Second Avenue Project, and compensate for the fact that it was not a Qualified Opportunity Zone project, Schuster agreed to pay Investor C a portion of the development fees that SD Manager was entitled to under the Developer Agreement: Investor C would receive the full development fees up to $1.2 million and 20% of any development fees above that amount, with Silverback receiving the remaining 80%.

54.    Investor C was not expected to perform any development or other services to receive the development fee.

55.    As a passive minority investor, Investor C was a non-managing member entirely dependent on Defendants for the management of SD Manager and the Second Avenue Project.

56.    The SD Manager LLC Agreement memorialized the parties' understanding that as the manager, Silverback would control the day-to-day operations and management of the company, including "the exclusive right and authority to manage and control the business of the Company"

and "the authority and power on behalf of and in the name of the Company to perform all acts and enter into and perform all contracts and other undertakings which the Manager may deem reasonably necessary, advisable, or incidental to the Business Purpose of the Company."

57.     Likewise, under the agreement, no non-managing member "shall take part in the management of the Company business, transact any business for the Company, or attempt to sign for or bind the Company."

58.     And Investor C could remove Silverback as the manager of SD Manager only under very limited circumstances — in the event of fraud, misappropriation, and gross negligence or willful misconduct relating to the project and only if Silverback failed to pay any actual damages suffered by SD Manager and/or Investor C within twenty days of Investor C's delivery of notice.

59.     That said, even if Investor C were to remove Silverback as the Manager of the SD Manager in these limited circumstances, the SD Manager LLC Agreement required the replacement manager to use commercially reasonable efforts to cause Schuster and any entities he controls to be released by any lenders for outstanding loans from all obligations under certain guarantees, or to indemnify Schuster and his entities if a lender was unwilling to grant such releases.

60.     Given the financial ramifications for removing Silverback even in the limited circumstances identified, Investor C was unable to remove Silverback as the manager of the SD Manager without great financial risk.

61.     Despite Investor C's reliance on Defendants for the management and development of the Second Avenue Project, Defendants misrepresented the intended use of Investor C's investment and the financial status of the Second Avenue Project prior to Investor C's investment, and subsequently misappropriated funds invested by Investor C, as detailed in paragraphs 81 to 127 below.

62.     To date, Investor C has not received any distribution of profits from the Second

Avenue Project.

## II. DEFENDANTS MADE MATERIALLY FALSE AND MISLEADING STATEMENTS TO INVESTORS IN THE SECOND AVENUE PROJECT

63.     Beginning in November 2018, when Investor A and Investor B made their initial capital contributions, through at least July 2020, when Defendants solicited additional investments and Investor C made an additional contribution pursuant to a capital call notice, Schuster defrauded the Second Avenue Project Investors and misappropriated investor funds.

64.     Defendants misrepresented the purpose for which these investments would be used in discussions with investors and in the relevant LLC agreements, comingled investor funds intended for the Second Avenue Project with funds received from lenders and investors in other real estate projects developed by Defendants, and then knowingly or recklessly misappropriated over $2 million of these investor funds, as detailed below.

65.     The over $2 million misappropriated by Defendants includes hundreds of thousands of dollars contributed by Investor A and Investor B, at least $1.6 million from Investor C's initial capital contribution, and nearly $170,000 from an additional contribution by Investor C.

### A. Defendants Represented that Investors' Funds Would Be Used Solely for Investing in the Second Avenue Project

66.     Based on the Second Avenue Project Investors' conversations with Schuster, as memorialized in the LLC agreements, they understood that Defendants would use investor funds for the business purpose of developing the Second Avenue Project, and not for any other purposes.

67.     For example, the SD Manager LLC Agreement with Investor C stated that its business purpose was to hold an indirect ownership interest in the Second Avenue Project, and to conduct activities relating to the "purchase, ownership, operation, financing, refinancing, management, maintenance, redevelopment, construction, leasing, sale and/or other disposition" of the underlying property.

68.    Moreover, Schuster solicited Investor C's investment by representing that he would develop the Second Avenue Project, which would result in Investor C collecting both a portion of development fees and cash distributions from the project once the project generated revenues.

69.    Likewise, Schuster represented to Investor A and Investor B that they would at least double their investment by profiting from Defendants' development of the Second Avenue Project, which was expected to be completed in three to four years.

70.    Consistent with that representation, the stated purpose of the JVEM Gramercy LLC Agreement, pursuant to which Investor A and Investor B contributed to the Second Avenue Project, was to invest in the Second Avenue Project by acting as a member of JVEM Silverback.

71.    The stated purpose of JVEM Silverback, of which Schuster was the operating manager, was to invest in SB Member, the entity through which Schuster and the investors he solicited ultimately derived their ownership interests in the Second Avenue Project.

72.    Despite these representations that investor funds would be used to develop the Second Avenue Project, Defendants used investor funds for unrelated purposes, as detailed below.

**B.    Defendants Knowingly or Recklessly Misappropriated the Second Avenue Project Investors' Capital Contributions**

**1.    Defendants Misappropriated Hundreds of Thousands of Dollars Contributed by Investor A and Investor B**

73.    In November 2018, Investor A and Investor B transferred $250,000 and $400,000 respectively to a bank account controlled by Schuster in the name of Silverback Acquisitions LLC (the "Silverback Acquisitions Bank Account").

74.    As of November 2018, the Silverback Acquisitions Bank Account had approximately $920,000, including the $650,000 in deposits from Investor A and Investor B.

75.    Over the course of November and December 2018, the Silverback Acquisitions Bank Account had outflows totaling approximately $890,000, leaving approximately $30,000 of

funds in the account by mid-December 2018.

76.    As a result of these outflows, the vast majority of the capital contributions by Investor A and Investor B were spent within approximately six weeks of these contributions.

77.    The majority of these outflows were not spent on expenses related to the Second Avenue Project.

78.    Specifically, approximately $185,000 of the funds in the Silverback Acquisitions Bank Account in November and December 2018 were spent on expenditures that are recorded in accounting records as being related to the Second Avenue Project.

79.    However, the remainder of the outflows from the Silverback Acquisitions Bank Account in November through mid-December 2018, totaling approximately $705,000, were spent on expenses that are recorded in accounting records as being unrelated to the Second Avenue Project, including Silverback's general corporate and payroll expenses, payments to Schuster, and payments for other real estate projects.

80.    By withdrawing funds from the Silverback Acquisitions Bank Account, including hundreds of thousands of dollars deposited by Investor A and Investor B, to cover expenses unrelated to the Second Avenue Project, Defendants misappropriated these investor funds.

### 2.    Defendants Misappropriated At Least $1.6 Million from Investor C's Initial Investment

81.    On December 16, 2019, Investor C transferred his initial investment of $5 million to the Silverback Acquisitions Bank Account, the same account in which Investor A and Investor B had deposited their contributions.

82.    In the days following Investor C's deposit, Schuster used at least $1.6 million of Investor C's initial contribution for expenses unrelated to the Second Avenue Project, including to pay himself, Silverback's payroll expenses, and other real estate project expenses.

83.    In an apparent effort to obscure accounting records reflecting the use of these

investment funds, Defendants transferred a portion of the $1.6 million to other bank accounts controlled by Schuster prior to making these improper payments.

84.      For example, on December 16, 2019, the same day Investor C deposited his initial capital contribution, Defendants transferred $500,000 of Investor C's capital contribution to a different bank account controlled by Silverback.

85.      On the next day, December 17, 2019, Defendants used these funds to make more than $440,000 in Ponzi-like payments to investors who had invested in a different real estate project developed by Defendants.

86.      Additionally, between December 17 and 19, 2019, Defendants made three additional transfers of funds totaling $2.95 million to yet a different bank account controlled by Silverback.

87.      On December 20, 2019, Defendants transferred $500,000 from this third bank account to Schuster's personal bank account.

88.      Between December 23 and 27, 2019, Defendants also made transfers totaling more than $400,000 from this third account to cover payroll or bonus payments to Silverback's employees.

89.      Contemporaneous text messages between Schuster and Silverback's controller show Schuster's intent to misappropriate Investor C's investment funds even before Investor C made his initial investment on December 16, 2019.

90.      For example, on December 9, 2019, Silverback's controller texted Schuster, "Josh. Need to figure out Cash.  For [two investors in other project] and we have [payroll] Thurs.  & we have no $ for bonuses."

91.      On the same day, Schuster responded, "Where did the $600k go from last week?? []  I'll be at the office shortly.  We need that [Investor C] deal to close."

92.     On December 12, 2019, Silverback's controller texted Schuster, "And I need to wire the $310+ for 2nd Ave in the am Where are we getting the $ from?  []  And what am I telling [the two other investors]. they're going to shoot me."

93.     Schuster responded, "[Investor C] will close tomorrow[.]"

94.     The two other investors referenced in these text messages are the recipients of the Ponzi-like payments made on December 17, 2019, the day after Investor C deposited funds to the Silverback Acquisitions Bank Account.

95.     These text messages show that Schuster solicited Investor C's initial capital contribution to the Second Avenue Project while intending to use these funds for unrelated purposes, namely, to pay investors in other real estate projects and to cover Silverback's payroll expenses.

96.     Defendants' misuse of funds contributed by the Second Avenue Project Investors conflicted with the stated business purpose of the two LLC agreements, as described above.

97.     Moreover, Defendants' misappropriation of funds, and their intent to misappropriate these funds at the time of soliciting investor funds, likewise conflicts with other relevant provisions of the SD Manager LLC Agreement.

98.     For example, the SD Manager LLC Agreement provided that pending use in the business of SD Manager or distribution to its members, company funds would be deposited in bank account(s) or invested, as determined by Silverback, and would not be commingled with the funds of any other person or entity.

99.     Nevertheless, as described above, Defendants directed Investor C to deposit his initial contribution into a bank account in which Defendants comingled funds and through which Defendants covered expenses not related to the Second Avenue Project.

100.     Moreover, the SD Manager LLC Agreement provided that "no Member or any

Affiliate thereof may receive any remuneration, compensation, loans or benefit from" SD Manager

except as provided in a budget and that SD Manager was responsible for "paying all of its own

expenses, including but not limited to . . . wages, salaries and benefits of its employees; rent for

office and warehouse space; onsite managers; utilities, telephone, and supplies; legal and accounting

expenses; and travel and entertainment," and that Silverback and its affiliates would be reimbursed

for costs and expenses only to the extent set forth in the budget.

101.    Neither the SD Manager LLC Agreement nor the corresponding budget authorized

the payments Defendants made for Schuster's personal benefit, to cover Silverback's general

corporate and payroll expenses, and to fund other real estate projects developed by Defendants.

**C.    Defendants Continued to Solicit Additional Contributions from the Second Avenue Project Investors and Misappropriated Nearly $170,000 in Additional Contributions from Investor C**

102.    After having misappropriated substantial portions of the initial capital contributions

from the Second Avenue Project Investors, Defendants continued to solicit additional capital

contributions from these investors.

103.    Defendants issued at least two capital call notices to the Second Avenue Project

Investors in July 2020 and February 2021.

104.    As a result of these capital call notices, Defendants solicited additional

contributions for the Second Avenue Project, including at least $700,000 in contributions from

Investor C.

105.    Specifically, Investor C contributed over $500,000 in July 2020 and over $200,000

in February 2021.

106.    Defendants misrepresented the purpose of at least one of these capital call notices,

namely the July 15, 2020 capital call notice (the "July 2020 Capital Call Notice").

107.    The July 2020 Capital Call Notice stated that "[t]his capital call will be used to cover

expenses related to the approximately 2 month delay and construction shut down resulting from COVID-19 as well as activity involving" a neighboring property's "encroachment onto our property" and "potential damage to the property as a result of development activities."

108.    Despite the July 2020 Capital Call Notice's description of a cash shortfall for the Second Avenue Project, the notice did not disclose that millions of dollars of investor funds from the Second Avenue Project Investors had been used for purposes other than the Second Avenue Project, or that outstanding loans created additional risks for the Second Avenue Project.

109.    Defendants misappropriated at least some of the additional capital contribution by Investor C, as they had with Investor C's initial contribution to the Second Avenue Project.

110.    As directed by the July 2020 Capital Call Notice, Investor C deposited over $500,000 to a bank account dedicated to the Second Avenue Project.

111.    Shortly thereafter, in July 2020, Defendants transferred all of Investor C's capital call contribution to accounts not associated with the Second Avenue Project.

112.    Defendants then misappropriated nearly $170,000 of funds transferred from Investor C's capital call contribution to cover expenses for other projects, for Schuster's personal expenses, and to pay for Silverback's corporate and payroll expense.

113.    The use of Investor C's July 2020 capital contribution for these expenses conflicted with the stated purpose of the Capital Call Notice, which was to cover expenses related to the Second Avenue Project.

114.    Likewise, the misuse of Investor C's July 2020 capital contribution conflicted with the business purpose stated in the SD Manager LLC Agreement, which as described above, was to hold an indirect ownership interest in the Second Avenue Project, and to conduct activities relating to the "purchase, ownership, operation, financing, refinancing, management, maintenance, redevelopment, construction, leasing, sale and/or other disposition" of the underlying property.

**D.** **Defendants Knowingly or Recklessly Failed to Disclose Certain Information About the Financial Status of the Second Avenue Project**

115.    Defendants also selectively disclosed some aspects of the Second Avenue Project's finances in their offerings related to the project, while knowingly or recklessly failing to disclose other information concerning the financial situation of the project or when otherwise required to make these disclosures pursuant to an agreement with an investor.

116.    Prior to Investor C's purchase of membership interests in SD Manager, Schuster disclosed information concerning certain loans for the Second Avenue Project to Investor C.

117.    Defendants assured Investor C that he had been provided with accurate information about the Second Avenue Project, including by representing in the Membership Interest Purchase Agreement dated December 16, 2019 between Investor C and Silverback that the "materials provided by Silverback to [Investor C] that are prepared by Silverback related to the Second Avenue Project are not materially inaccurate or misleading," and that "[n]o agreement or obligation exists that has the effect of restricting the ability of Silverback to perform its obligations under this Agreement."

118.    Contrary to those representations, Defendants misled Investor C by disclosing certain loan obligations while failing to disclose other loans before Investor C's investment.

119.    Specifically, Schuster failed to disclose the fact that SD Manager was in default on a $1.5 million promissory note, and the entire principal plus interest was outstanding.

120.    Schuster also failed to disclose that he had pledged a portion of SD Manager's ownership interest in the Second Avenue Project as security for nearly $1 million in loans made by two other parties, and had received a notice of default on December 2, 2019, shortly before Investor C's initial investment in SD Manager.

121.    These loans were material to Investor C because they encumbered SD Manager's ownership interest in the Second Avenue Project, potentially diminishing the value of his investment

in SD Manager, and created uncertainty concerning the management of the Second Avenue Project.

122.    Moreover, even after Investor C's initial investment, Defendants continued to mislead him concerning the financial status of the Second Avenue Project.

123.    Under the SD Manager LLC Agreement, Investor C had the right to receive periodic financial and project development updates, as well as to inspect the books and records.

124.    Defendants at times either failed to provide such records or provided misleading records that did not show Defendants' misappropriation of funds.

125.    For example, after Investor C's initial investment, he specifically asked Schuster for information about how Investor C's $5 million initial contribution was being spent.

126.    Defendants repeatedly failed to provide the requested financial data to Investor C, data that would have shown that Defendants had in fact misused and misappropriated a significant portion of those funds.

127.    Additionally, Schuster cultivated a personal relationship with Investor C, which discouraged Investor C from asking questions concerning the financial status of his investment in the Second Avenue Project, with Schuster even convincing Investor C to lend Schuster least $1 million dollars in personal loans, which Schuster only repaid in part.

### FIRST CLAIM FOR RELIEF
**Violations of Securities Act Section 17(a)**
**(Schuster and Silverback)**

128.    The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 and 127.

129.    Defendants, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly have employed one or more devices, schemes, or artifices to defraud, (2) knowingly, recklessly, or negligently have obtained money or

property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchaser.

130.    By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### (Schuster and Silverback)

131.    The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 and 127.

132.    Defendants, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, knowingly or recklessly have (1) employed one or more devices, schemes, or artifices to defraud, (2) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

133.    By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

**I.**

Permanently enjoining Schuster and his agents, servants, employees, and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. § 77q(a)], and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**II.**

Permanently enjoining Silverback and its agents, servants, employees, and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. § 77q(a)], and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**III.**

Ordering Defendants to disgorge all ill-gotten gains they received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(3), (d)(5), and (d)(7) [15 U.S.C. § 78u(d)(3), 78u(d)(5), and 78u(d)(7)].

**IV.**

Ordering Defendants to pay civil monetary penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)].

**V.**

Permanently enjoining Schuster from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer, except for purchasing or selling securities for his own personal account, pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d)(1) and 21(d)(5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1) and 78u(d)(5)].

## VI.

Granting any other and further relief the Court may deem just and proper.

## JURY DEMAND

The Commission demands a trial by jury.

Dated: New York, New York
        May 7, 2025

> /s/ Elisa S. Solomon
> Tejal D. Shah
> Sandeep Satwalekar
> Elisa S. Solomon
> Zheng (Jane) He
> Attorneys for Plaintiff
> SECURITIES AND EXCHANGE COMMISSION
> New York Regional Office 100 Pearl Street
> Suite 20-100
> New York, NY 10004-2616
> 212-336-0427 (Solomon)
> SolomonEl@sec.gov